STATE *ex rel.* WEST, *Atty. Gen.,* v. JOURNAL Co. *et al.*

No. 227.   Opinion Filed November 9, 1909.

(105 Pac. 655.)

INJUNCTION—Liquor Advertisements—Remedy by Criminal Proceeding.   The publishing of advertisements for the sale or the soliciting the purchase of vinous, spirituous, or malt liquors or any imitation thereof or substitute therefor, contrary to the provisions of section 1, art. 3, c. 69, Enforcing Act (Sess. Laws 1907-08, p. 603), or of the prohibition provision of the Constitution, may not be restrained by means of an injunction.

(a) A criminal proceeding is the remedy against such infractions.

(Syllabus by the Court.)

*Error from District Court, Logan County; J. C. Strang, Special Judge.*

Action by the State, on the relation of Charles West, Attorney General, against the Journal Company and others. Application for injunction denied, and relator brings error. Affirmed.

On the 21st day of April, A. D. 1908, the plaintiff in error, as plaintiff, filed its petition against the defendants in error, as defendants, in said court, the body of which is in words and figures, as follows:

"Comes the plaintiff by Chas. West, its Attorney General, and states: That, in defiance of law, on the 19th day of April, 1908, the defendant, the Dallas Brewery, whose true name and whether a corporation or co-partnership is unknown to plaintiff, and J. Rieger & Co., whose true name and whether a corporation or co-partnership or not is unknown to plaintiff, and Palace Drug Company, L. Craddock & Co., and Sonnentheil-Holbrook Company, whose true names and whether corporations or copartnerships or not are unknown to the plaintiff, acting together with the owners and publishers of the Dallas Morning News, A. H. Belo & Co., and George Eyssell and A. M. Jones Distilling Company, whose true names and whether corporations or copartnerships or not are unknown to the plaintiff, and Duffy Malt Whiskey Company, whose true name and whether a corporation or copartnership or not is unknown to the plaintiff, and the Hayner Distilling Company, whose true name and whether a corporation or copartnership or not is unknown to the plaintiff, and Urbana Wine Company, whose true name and whether a corporation or copartnership or not is unknown to the plaintiff, and J. Rieger & Co., whose true name and whether a corporation or copartnership or not is unknown to plaintiff, and Anheuser-Busch Brewery, whose true name and whether a corporation or copartnership or not is unknown to the plaintiff, and John Gund Brewing Company and H. C. Yates, whose true name and whether a corporation or copartnership or not is unknown to the plaintiff, and S. Hirsch & Co., whose true name and whether a corporation or copartnership or not is unknown to plaintiff, and Myers & Co., whose true name and whether a corporation or copartnership or not is unknown to this plaintiff, and Glasner & Barzen Distilling & Importing Company, whose true name and whether a corporation or copartnership or not is unknown to the plaintiff, and John Spengler, acting through and with the Journal Company, the owners and publishers of the Kansas City Journal, and J. H. Rieger & Co., whose true name and whether a corporation or copartnership or not is unknown to the plaintiff, and the Hayner Distilling Company, acting with the Globe Printing Company, the publishers of the St. Louis Globe-Democrat, and H. Bran & Co., whose true name and whether a corporation or copartnership or not is unknown to the plaintiff, acting with the Record Company, the publishers of the Ft. Worth Record, and Anheuser-Busch Brewery, whose true name and whether a corporation or copartnership or not is unknown to the plaintiff, acting with Geo. Knapp & Co., publishers of the St. Louis

Republic, did solicit the purchase and sale of spirituous, vinous, fermented, and malt liquors and imitations thereof and a substitute therefor, and of liquors and compounds containing as much as one-half of 1 per cent. of alcohol, capable of being used as a beverage, not a preparation compounded by any licensed pharmacists, the sale of which would not subject the compounder to the payment of the special tax required by the laws of the United States by an advertisement in newspapers circulated in the state of Oklahoma and the county of Logan, to-wit, the Morning News of Dallas, Tex., the St. Louis Republic, the St. Louis Globe-Democrat, the Kansas iCity Journal, 'the particular advertisements being hereto attached, the advertisements in the Kansas City Journal being marked 'Exhibit A' and made a part hereof; the advertisements in the St. Louis Globe-Democrat being marked 'Exhibit B' and made a part hereof; the said advertisements in the Ft. Worth Record being marked 'Exhibit C' and made a part hereof, the said advertisements in the St. Louis Republic being marked 'Exhibit E' and made a part hereof. That after said advertisements were so published on the 19th day of April, 1908, as aforesaid, in said papers, that said the State Capital Company, a corporation incorporated under the laws of the territory of Oklahoma and a domestic corporation in the state of Oklahoma, and John Doe and Richard Roe, whose true names are unknown to the plaintiff, doing business as the Owl Drug Store in the city of Guthrie, Okla., and John Doe and Richard Roe, whose true names are unknown to this plaintiff, doing business as the Hotel Ione News Stand in the city of Guthrie, Okla., did then and there distribute, publish, and display said advertisements advertising where such liquor was manufactured, bartered, sold, given away, and otherwise furnished on the 19th and 20th days of April, 1908, by offering said newspapers with said advertisements therein openly for sale to all who would buy the same. That many other persons in the state of Oklahoma likewise distributed and published said advertisements. That it has been the custom for said newspapers to publish such and like advertisements, and it has been the custom for said defendants and other persons too numerous to mention to distribute and offer for sale and advertise said advertisements throughout the state of Oklahoma and other places too numerous to mention. That said custom is of long duration, dating from the 16th day of November, 1907. That, unless enjoined, said defendants, will continue to publish said advertisements, and will continue said distribution. That said offense is a public nuisance, in that it is a solicitation in this state

and advertisement therein of a sale of intoxicating liquors, including ale, wine, and beer and prohibited by the laws of this state, and said acts annoy, injure, and endanger the safety, liberty and health of the inhabitants of this state, offend public decency, and render the person of the inhabitants of this state insecure, and are a public and a common nuisance, and the same is solicited, advertised, published, and distributed openly and commonly, and affects a great many of the citizens of this state. That said acts constitute an abandonment of the corporate rights of said defendants to do business in this state. That plaintiff has no adequate remedy according to the course of the common law, and that, unless the defendants are enjoined, they will continue in said violation of law and the committing of said nuisance, and said acts amount to a forfeiture of any or all of their corporate rights.

"Wherefore plaintiff prays that defendants be enjoined from advertising, soliciting, distributing, or publishing any advertisements in this state of the sale of intoxicating liquors, including wine, ale, and beer, and that said publishers be restrained and enjoined from in any way soliciting such sale of such liquors, and from distributing or offering for sale their publications in this state as long as the same continue said solicitation and the advertisement of the sale of such liquors, and that said defendants distributing and selling the same be enjoined from offering, distributing, or publishing or placing where the same can be seen any of said newspapers or any other containing such advertisements and solicitations, and that the plaintiff be permitted to add hereto the names of any other persons in this state advertising, soliciting, publishing, or distributing such advertisements and solicitations as herein named, and that the same may be made parties hereto as fast as the same can be discovered, and for a bill of discovery as against all the defendants as to who, if any, such persons, so distributing, publishing, advertising, and soliciting may be in this state, and that, if said injunction does not properly restrain said defendants from the commission of such nuisance, all of such defendants who are corporations doing business in this state or foreign corporations be ousted from doing business in this state, and that all said corporations which are domestic corporations forfeit their corporate rights as such, and for the costs of this action, and such further relief as the equity of the case may warrant."

On the 24th day of April, A. D. 1908, application was made by the plaintiff in error for temporary writ of injunction as prayed

in the original petition, and then and there the defendants filed an affidavit made by Frank Greer, the body of which is in words and figures as follows:

"The said defendant the State Capital Company is engaged in the business of printing, editing, and publishing a daily newspaper and a weekly newspaper known as the Oklahoma State Capital published at Guthrie, Logan county, Okla., and of general circulation throughout the state of Oklahoma, and is also engaged in the general printing and publishing business, including the sale of daily newspapers published in other states in the Union than the state of Oklahoma. That the said State Capital Company has not committed, and is not committing, any public nuisance in the solicitation in the state of Oklahoma or by the publishing in its said newspaper or the sale of any other newspapers therein of the sale of intoxicating liquors, including ale, wine, and beer, prohibited by the laws of the state of Oklahoma, and is not doing any of the acts in that regard charged in plaintiff's petition in this cause.

"Affiant further says that none of the following defendants, to-wit: The Journal Company, the Record Company, the Globe Printing Company, Geo. Knapp & Co., A. H. Belo & Co., the Dallas Brewery, J. Rieger & Co., Palace Drug Company, L. Craddock & Co., Sonnentheil-Holbrook Company, George Eyssell, A. M. Jones Distillery, Duffy Malt Whiskey Company, Hayner Distilling Company, Urbana Wine Company, Anheuser-Busch Brewery, John Gund Brewing Company, H. C. Yates, S. Hirsch & Co., Myers & Co., Glasner & Barzen Distilling & Importing Company, John Spengler, H. Bran & Co.—are residents of or have their publishing houses or liquor houses, respectively, in the state of Oklahoma, but are all nonresidents of the state of Oklahoma, and all have their publishing houses or liquor houses and their respective places of business in other states of the Union than the state of Oklahoma, and that the said defendant the Journal Company and the other publishing houses therein named and the Dallas Brewery and other liquor houses therein named of said above-named defendants who are nonresidents of the state of Oklahoma all have their places of business and establishments outside of the state of Oklahoma and in other states of the Union, and not within the state of Oklahoma.

"And affiant further says that all of the said advertisements for the sale of intoxicating liquors set out by Exhibits 'A,' 'B,'

'C,' 'D,' and 'E,' respectively, in plaintiff's petition, as being published by the Morning News of Dallas, Tex., the St. Louis Republic, St. Louis Globe-Democrat, and the Kansas City Journal, all of which three papers are published in the state of Missouri, and the said Morning News Journal is published in Dallas, Tex., and all of said papers, being published outside of the state of Oklahoma, contain only advertisements of liquor houses that are engaged in the manufacture, sale, or distribution of intoxicating liquors outside of the state of Oklahoma, and that none of the said liquor houses whose advertisements appear in the advertisements mentioned and described or set out or exhibited in the plaintiff's petition reside in or are doing business or engaged in the sale or other disposition of intoxicating liquors within the state of Oklahoma, but are engaged in the said business, as their advertisements in fact show and indicate, in Kansas City, in the state of Missouri, in Rochester, in the state of New York, in St. Louis, in the state of Missouri, in St. Paul, in the state of Minnesota, in Chattanooga, in the state of Tennessee, and in Kansas City, in the state of Missouri, and in Dallas, in the State of Texas, and Ft. Worth, in the state of Texas, and none of the said liquor houses are engaged in the sale, giving away, or other distribution of intoxicating liquors in the state of Oklahoma in violation of the laws of said state, but said sales in so far as they are made of liquors which are transported into the state of Oklahoma for citizens of said state are sold in the original packages as articles of interstate commerce, and for delivery in the original packages to the citizens of said state, for the personal use of the purchaser only, and not for sale or other distribution in violation of the Constitution or the laws of Oklahoma, and that it is such sales only, if any, that are advertised in the advertisements and publications complained of in the plaintiff's petition, and it is such only that the State Capital Company has been in any way a party to the publication of, or the distribution of—that is, of the wares and merchandise of liquor houses residing and having their places of business entirely without the state of Oklahoma—and, so far as their Oklahoma business is concerned, engaged only in the legitimate exercise of their rights as merchants engaged in interstate commerce between the people of said other states than the state of Oklahoma and the citizens of the state of Oklahoma, and not in any way, manner, or form in the illegal handling, sale, or disposition of any intoxicating or other liquors in violation of the Constitution or the laws of the state of Oklahoma.

"Affiant further says that such advertisements as the said the Oklahoma State Capital has distributed or published or displayed in any way in the said publications the said newspapers the Kansas City Journal, the Morning News of Dallas, Tex., the St. Louis Republic, St. Louis Globe-Democrat of St. Louis, Mo., were only the publications and advertisements of liquor houses having their goods, wares, and merchandise and intoxicating liquor for sale at points in other states than the state of Oklahoma, and none of them being within the state of Oklahoma, and that said advertisements likewise relate to the business of said liquor houses which are selling their liquors and advertise same for sale in various and numerous other states in the Union where said houses are located and engaged in business, and in other states where the sales of intoxicating liquors are made under the provisions of law authorizing such sale, not only in original packages, but in the retail trade and in the common manner of doing business in saloons in said states other than the state of Oklahoma; or, if sold in so-called prohibition states, are sold and delivered in the original packages in the proper and legitimate exercise of their rights under the interstate commerce laws of the United States.

"And affiant further says that the state of Oklahoma by its high legal officer, the Attorney General of said state, has recognized that such publications are entirely lawful and legitimate, and are not crimes or offenses under the laws of the state of Oklahoma, for that on or about the 7th day of April, 1908, the honorable Charles West, the duly elected, qualified, and acting Attorney General of the state of Oklahoma, did make and deliver to his excellency, the Governor of the state of Oklahoma, his opinion in writing to that effect, a true and correct copy of which said opinion is hereto attached, marked 'Exhibit A' and made a part of this affidavit.

"And affiant further says that the said State Capital Company in the distribution of the said newspapers so published in other states of the Union, and which contained the advertisements of liquor houses engaged in business in other states of the Union, and only so far as Oklahoma is concerned in the transaction of legitimate interstate commerce with the people of Oklahoma, is only exercising its legitimate rights as a citizen of the state of Oklahoma, and that the state of Oklahoma or the Attorney General thereof has no right under the laws and the Constitution of the state of Oklahoma to enjoin the said State Capital Company from so doing; that the granting of the injunction prayed for

by the plaintiff in this case would be not only a violation of the corporate rights of this plaintiff and the rights of the said defendants so engaged in the said newspaper business and the said liquor businesses in other states of the Union, but would be violative of the right of free speech granted by the Constitution of the state of Oklahoma to every person to freely speak, write, or publish his sentiments on all subjects, being responsible for an abuse of that right, and in violation of the rights granted by the Constitution of said state declaring that no law shall be passed to restrain or abridge the liberty of speech or of the press in the state of Oklahoma.

"And affiant further says that the said State Capital Company has not in any way been engaged in the distribution of any of the newspapers named in plaintiff's petition or any other newspapers which have contained advertisements of the sale or other distribution of any of the intoxicating liquors prohibited by the laws of this state nor any of said publications soliciting the purchase or sale of any such liquors, and has not published or displayed any advertisements or notices where any such liquors may be manufactured, bartered, sold, given away, or otherwise furnished.

"And affiant denies that the State Capital Company has committed any act or acts charged in plaintiff's petition which are in any way a violation of the Constitution or laws of the state of Oklahoma or any of its rights as the publisher or distributor of newspapers or advertisements in the state of Oklahoma."

Exhibit A.

"Guthrie, Okla., April 7, 1908.

"Mr. B. F. Finney—Dear Sir: Your letter of the 20th of March is fully covered by a letter of the 7th of April to the Governor, and a letter of the 19th of February, to Sidney Suggs, of Ardmore, copies of which are hereto attached. Respectfully, Charles West, Attorney General.

" 'To His Excellency, the Governor—Dear Sir: I am in receipt of your letter of the 5th of April, in which you say: "A week ago last Sunday, the Guthrie State Capital carried four whiskey advertisements. I am satisfied these advertisements are in violation of law, and I decide that proper criminal proceedings be brought to punish those responsible for the publication thereof." I have asked Mr. Hamburger for a copy of the paper you have in mind, and he has given me a copy of the State Capital of the 5th of April, and says that the publications he has marked are

precisely like the publication you have in mind. The first publication is one of "Moonshine ·Whiskey," and says: "L. Craddock & Co., Dallas Texas," and states: "Orders for that part of Oklahoma which was formerly Indian Territory, must be accompanied by freight charges. No goods can be shipped there by express. We can ship by express to any part of old Oklahoma." There is nothing in this advertisement that we can see that is a solicitation for an intrastate shipment. It is apparently a solicitation for an interstate shipment—a shipment to be made from Dallas to some part of this state. The next is for "Willow Dale," whiskey. The address in that case is "Swift Creek Distilling Co., Louisville, Ky.," and nothing is contained in that which shows that it means to sell whiskey in Oklahoma. On the contrary, the first words in large type are "Direct from our distillery." This also is, therefore, an interstate transaction. The next is that of "Reefer's Green Mountain Whiskey." It says that its distillery is in Kentucky, and that its warehouses are there, and says: "If you want your order filled same day it is received, mark your envelope 'personal,' and address it plainly to M. C. Reefer, President, Kansas City, Missouri." There is nothing in this advertisement that we can find except a solicitation of an interstate purchase and shipment. These are all the advertisements I find in that paper. In order to convict any one of a criminal offense it must be borne in mind that the proof must be sufficient to prove the accused is guilty, beyond a reasonable doubt, and in these cases, it is clearly beyond a reasonable doubt that it is an interstate and not an intrastate shipment that is solicited. The same provision of the Constitution that prohibits advertising also prohibits soliciting, and in neither is any qualified phrase used; and, therefore, we must presume that the same kind of advertising is prohibited as that kind of soliciting that is prohibited. The Supreme Court of the United States has held that a state law that undertook to prohibit the soliciting within the state of an interstate shipment of liquor would be unconstitutional, and since that holding in all laws that have prohibited the soliciting of sales of liquors, the courts have interpreted the word, "solicitation" to mean the "soliciting of an intrastate shipment and not an interstate shipment." In like manner therefore, the word advertising occurring in the same context must be held to be an advertisement of an intrastate shipment or sale and not the advertising of an interstate sale. In other words, an advertisement of a sale within the state is illegal, but an advertisement of

a sale from out of the state cannot be made illegal by this state. This view of the matter was taken by this office on the 19th of February in a letter to Mr. Sidney Suggs, a copy of which we inclose. We therefore remain in expectancy of further information from you as to what are the facts of violation of the law which you had in mind, as doubtless it could not have been the matters contained in the paper of the 5th of April that Mr. Hamburger called to our attention. Respectfully, Charles West, Attorney General.' "

On the 6th day of May, A. D. 1908, the application for temporary injunction was denied, and an appeal therefrom has been duly prosecuted to this court.

    *Charles West,* Atty. Gen., for plaintiff in error.

    *Horace Speed,* for defendants in error.

    Williams, J. (after stating the facts as above). The defendants in error have raised the following questions:

(1) That the act commonly referred to as the "Enforcing Act" (Sess. Laws 1907-08, pp. 594-614, c. 69) is repugnant to section 57, art. 5, Const., which provides that "every act of the Legislature shall embrace but one subject, which shall clearly be expressed in the title," in that the part of the said act relating to the publication of liquor advertisements, etc., does not come clearly within the title.

(2) That the statute having created a crime unknown to the common law, the remedy prescribed by statute for its enforcement is exclusive, and that neither common-law nor equitable remedies can be invoked for such enforcement.

(3) That the writ of injunction is not a proper remedy in this case.

(4) That the defendants may not be prevented from publishing liquor advertisements in newspapers in another state for the lawful sale, etc., of liquors within such state and causing such papers to be transmitted through the United States mails to subscribers in this state.

(5) That where the defendants publish newspapers without the state containing such advertisements and transmit them by

mail or express into this state to be sold at or delivered from newspaper stands, or by carriers, neither such newspaper companies, nor the agents or employees thereof within the state, can be punished or prevented from selling or delivering such papers.

In the case of *State ex rel. West, Attorney General, v. State Capital Company,* 24 Okla. 252, 103 Pac. 1021, it was held that the publishing of advertisements for the sale or soliciting the purchase of spirituous, vinous, fermented, or malt liquors by a newspaper published within the state may not be restrained by means of injunction, but that a criminal prosecution would lie for such infraction. The foregoing rule necessitates the affirmance of the judgment of the lower court in this case. The defendant in error, however, has briefed all the questions raised, and, the Attorney General having failed to file any brief in this case, we decline to pass on the other questions raised.

The judgment of the lower court is affirmed.

All the Justices concur.